## IN THE UNITED STATES DISTRICT COURT
## FOR THE EASTERN DISTRICT OF PENNSYLVANIA

| | | |
|---|---|---|
| **ALL AGES PRODUCTIONS, LLC,** | : | **CIVIL ACTION NO.** |
| **1315 Walnut Street #1530** | : | **24-CV- 3217** |
| **Philadelphia, PA, 19107-4715** | : | |
| *Plaintiff,* | : | |
| | : | |
| | : | |
| **v.** | : | |
| | : | |
| **JOSEPH PELL LOMBARDI** | : | |
| **d/b/a Office of Joseph Pell Lombardi,** | : | |
| **Architect** | : | |
| **55 Liberty St., Fl 29** | : | |
| **New York, NY 10005-1006** | : | |
| | : | |
| **and** | : | |
| | : | |
| **ARMOUR-STINER OCTAGON** | : | |
| **HOUSE** | : | |
| **45 W Clinton Ave.** | : | |
| **Irvington, NY 10533-2129** | : | |
| | : | |
| *Defendants.* | | |

## COMPLAINT FOR COPYRIGHT INFRINGEMENT

Plaintiff, All Ages Productions, Inc. ("All Ages"), complains against Defendant

Joseph Pell Lombardi d/b/a Office of Joseph Pell Lombardi, Architect ("Lombardi" or

"Defendant") and the Armour-Stiner Octagon House ("Octagon House") (together,

"Defendants") as follows:

## PARTIES

1.      All Ages is a Pennsylvania limited liability corporation with its principal

place of business at 1315 Walnut Street #1530, Philadelphia, PA, 19107-4715.

2.      Lombardi is an adult individual who does business as Office of Joseph

Pell Lombardi, Architect. On information and belief, he resides and/or maintains an

office or usual place of business at 55 Liberty St., Fl 29, New York, NY 10005-1006.

3.　　　Office of Joseph Pell Lombardi, Architect is, on information and belief, either an expired entity or a sole proprietorship by which Joseph Pell Lombardi conducts business as an architect at 55 Liberty St., Fl 29, New York, NY 10005-1006.

4.　　　The Armour-Stiner Octagon House is a business that conducts tours of its premises at 45 W Clinton Ave., Irvington, NY 10533-2129. On information and belief, the Octagon House a sole proprietorship by which Joseph Pell Lombardi conducts his private museum and tour business.

## NATURE OF THE ACTION

5.　　　This is an action for copyright infringement occasioned by Defendant Lombardi's unlicensed use of Plaintiff All Ages video named "The Octagon House Trailer."  The action also seeks to collect unpaid fees and costs that Lombardi incurred in performing professional services on behalf of and at the request of Defendants.

## JURISDICTION AND VENUE

6.　　　This court has subject matter jurisdiction over the copyright infringement claim, with jurisdiction vested in this Court pursuant to 28 U.S.C. § 1331 (federal question jurisdiction) and 28 U.S.C. § 1338(a) (acts of Congress relating to copyrights).

7.　　　This Court has personal jurisdiction over Defendants because Philadelphia County is where the causes of action arose, it is the location where All Ages performed all the non-field services. It is also the venue in which the parties agreed to litigate pursuant to paragraph 8 of the Professional Services Agreement ("PSA"). The PSA provides that "any legal proceeding regarding this Agreement shall take place in a court of competent jurisdiction sitting in Philadelphia County, Pennsylvania, applying

Pennsylvania law."

8.      Venue in this judicial district is proper under 28 U.S.C. § 1391(b)(1)

because this is a judicial district in which defendant is subject to the court's personal

jurisdiction with respect to such action.

9.      Pursuant to 28 U.S.C. § 1367, this Court has supplemental jurisdiction

over any state law claims contained herein by virtue of its original jurisdiction over the

copyright matter.

## STATEMENT OF FACTS

10.     Lombardi, doing business as Office of Joseph Pell Lombardi, Architect,

engaged All Ages to create a documentary film about his  restoration of the historic

Armour-Stiner Octagon House in Irvington, New York (the "Octagon House"). *See* PSA

dated  May 4, 2021, attached hereto  as Exhibit "1."

11.     All Ages performed professional services for Lombardi in accordance

with the agreement by creating a documentary film (the "Protected Work.")

12.     Paragraph "1" of Exhibit "B" of the PSA provides that the Protected Work

is work for hire:

> Contractor hereby acknowledges and agrees that all right, title and interest
> in and to the Works shall be the sole property of the Client, free from any
> claims whatsoever by the Contractor **except as provided in paragraph 2
> below**. Client shall have the exclusive right to register copyright any and
> all of the Works in Client's name as the owner and original author thereof,
> and to secure any and all renewals and extensions of such copyright.
> Solely for the purposes of any applicable copyright law, the Contractor
> and all other persons rendering services in connection with producing the
> Works shall be deemed "employees for hire" of Client which shall have
> the unlimited perpetual right throughout the world to sell, market, transfer,
> or otherwise deal in the Works and to make such changes, additions or
> deletions thereto as Client shall determine. If Contractor is ever
> determined not to be a worker for hire, Contractor hereby assigns all its

interest in the Works to Client and will execute any additional documents reasonably necessary to effectuate such assignment.

Emphasis added. *Id*.

13.     Paragraph "2" of Exhibit "B" modifies paragraph 1 as follows :

Notwithstanding anything herein, or any disputes whatsoever between the Parties, the grant of rights in the Works, in paragraph 1 above, is contingent upon timely payment in full by the Client of all invoices sent by Contractor as provided in the attached Agreement. Client waives any "implied license" defense to any infringement action by Client if Client has not been timely paid in full as agreed.

*Id.*

14.     The original contract price was **$56,363.40.** Lombardi was to pay in three installments of  **$22,545.36, $16,909.02,** and **$16,909.02.**

15.     Lombardi made the first contract payment of **$22,545.36** on Invoice Number 2935 on May 20, 2021. *See* Exhibit "2."

16.     Subsequently, Lombardi made several requests in writing for additional work which  increased the scope of  the project.

17.     Originally, Lombardi requested a video "house tour" to use during the covid-19 lock down which closed down his business conducting paid  tours of the Octagon House. The scope of work was a video of the house, its  contents, and its preservation.

18.     Subsequently, Lombardi requested additional work to showcase his professional life's work as a preservation architect.

19.     In addition,  Lombardi made specific requests for additional "shoots," for additional content such as aerial photography, and for the review and selective incorporation of masses of "archival" material, some of which were personal photographs

and videotapes.

20.    All Ages conducted a filming "shoot" on May 20 and 21,  2021. That was all the fieldwork provided for in the PSA.

21.    Soon after  signing the contract, Lombardi requested a change of scope to include a second shoot to interview Raina Regan, an official at the National Trust for Historic Preservation. All Ages shot that sequence in Washington, DC, when  Ms. Regan declined an invitation to visit the Octagon House for a filmed interview.

22.    On  July 7 and 14, 2021, Lombardi again enlarged the scope  of the work by requesting that All Ages include a large amount of archival material about his family and about his career,  much unrelated  to the Octagon House. He also requested an enlarged script including material from his self-published book on the Octagon House.

23.    On July 15, 2021, James Dolittle at All Ages wrote Lombardi stating that All Ages completed the original scope of the production work and that the script revision was "in the homestretch." He requested payment, acknowledging that Lombardi had requested additional work – the D.C. interview and incorporation of archival materials on Lombardi's family and larger career – which would be separately billed.

24.    Lombardi made the second of three contract payments for **$16,909.02** on Invoice number 2936 July 19, 2021. *See* Exhibit "3."

25.    Between August 2 and 5, 2021, the parties discussed how to process what Mr. Lombari's daughter Jess described as a "gigantic" volume of family VHS tapes for selective inclusion  in the film, which was outside the original scope of a house tour film. Lombardi said he would review the tapes himself to select relevant "snippets." That delayed the completion of the additional work he requested. And, in the end, Lombardi

did not do that work as promised and Lombardi sent the "gigantic" volume of family

memorabilia to All Ages for processing. That was another enlargement of the scope of

work requested. When All Ages sent Lombardi a terabyte of converted footage of family

videos on August 9, 2021, he replied by email it was "exactly what I wanted."

26.     On July 21, 2021, Laris Kreslins ("Kreslins") at All Ages wrote Lombardi

that the script would incorporate larger sections from his book, as he had requested, and

would incorporate the DC shoot with Raina Regan that Lombardi wanted. Then All Ages

expected to be  done.

27.     On August 14, 2021, Dolittle at All Ages sent Lombardi a  rough cut of

the final film. He proposed a series of deadlines leading to an ahead-of-schedule finish

date of August 23, 2021.

28.     Lombardi had different ideas. On August 16, 2021, his son Mike, who

manages the Octagon House business, wrote back that it was a "wonderful start and

certainly has the potential to be fantastic" but proposing a much larger project of either

two films, one on the house and one on Lombardi's career, or "a longer film that

combines both".

29.     At a virtual meeting on August 18, 2021, the parties agreed to create a

second film on Lombardi's career.

30.     On August 27,  2021 Kreslins at All Ages to wrote to Lombardi that he

would provide a "game plan for finishing off the Octagon film and a more solid scope for

a Joe-centric documentary."  He stated  that All Ages would send along  "overage costs

for the DC shoot with Raina."

31.     On September 6, 2021, Kreslins sent Lombardi the house tour and

renovation film, stating that All Ages was holding back material for the "stand alone documentary" on Lombardi's life. He stated that the house film originally contracted for was in the "homestretch" pending script revisions by Lombardi.

32.     Instead of reviewing the house tour script and completing the original project on time, as All Ages wished to do, Lombardi decided he wanted one longer film combining the house tour and his career. On September 16 and 23, 2021, Kreslins pressed Lombardi for details of the enlarged scope that he then wanted, stating that All Ages would need to procure licenses to reproduce many of the new materials that Lombardi wanted included.

33.     On September 28, 2021, Dolittle wrote Lombardi reviewing the status on "editorial" and "budget." The "editorial" progress was that All Ages was filtering for inclusion the additional archival materials from Lombardi. He notes that Lombardi still had not provided comments on the script on which Lombardi wanted to "take a lead." Dolittle said that All Ages wanted to "assess a final schedule…"

34.     The "budget" part of the September 28, 2021, communication attached documents showing production overages to that point and projections against two additional days of shooting needed in light of "our last conversation." Production overages from the first leg of production totaled $5,555. Then the DC trip added $6,665.88. Dolittle also made projections for two additional days of shooting at the House with a limited crew (no lights/sound) but offered a one-day option "If budget is becoming a concern." He also stated that there would be additional costs to incorporate Lombardi's "additional editorial asks" consisting of new footage and additional archival material.

35.     The original contracted work was scheduled for completion in September 2021. At that time, All Ages had provided what it believed was a finished house tour film for Lombardi's review despite Lombardi's many requests for additional work. But Lombardi refused to provide final comments. Instead, he wanted a much more ambitious film paying homage to his entire career. All Ages was prepared to do that additional work, and it provided estimates of the additional costs.

36.     In what became a pattern of dilatory behavior, Lombardi did not respond to Dolittle's September 29, 2021, message until October 11, 2021. Lombardi said he did not respond because he was "tied up."

37.     In exchanges between October 18 and 31, 2021, Lombardi overruled All Ages' suggestion to replace duplicative "tour-centric"  archival material (still photographs) of the house with film footage. He wanted both, and wanted the script expanded to reference all the still images he wanted added.

38.     On October 20, 2021, Dolittle sent a message on "Budget Revisit" to Lombardi  to "get the books here in order" before "the final script pass as well as the last production day" of additional shooting. That last day was a shoot that Lombardi wanted at the House, on November 3, 2021, to capture fall colors. Dolittle stated total overages to date for additional work including "additions to the contracted dates" and the DC shoot at $12,220.88. He also estimated costs for the added day of production (the fall shoot planned for November 11, 2021) at $5,313 with a request for approval. He also estimated that additional post-production work "ingest all of the new material" (photographs) that Lombardi wanted added would cost an additional $7,000.

39.     On October 21, 2021, Mike Lombardi, Lombardi's son, authorized a

professional drone photographer to shoot film of the Octagon House in the fall and agreed not to get a sunrise shoot to avoid the added costs of the drone operator's hotel stay the night before.

40.     In response, on October 20, 2021, Lombardi approved the $12,220.88 for the extra work to date and approved the $5,313 for the fall shoot. He asked for later discussion of the $7,000 post-production to ingest all the images that he wanted included (against All Ages' cinematic advice).

41.     On November 3, 2021, All Ages had another shoot at the House that was outside the scope of the original contract.

42.     On November 8, 2021, Lombardi paid the **$12,220.88** for the extra work production overages and DC shoot. *See* Exhibit "4."

43.     Between November 26 and December 7, 2021, the parties discussed how the expansion of the script to include the additional material that Lombardi wanted added from his book took an added 15 minutes. That period of time needed "visual fill" with additional stills from Lombardi which All Ages would have to incorporate through yet more additional work.

44.     On December 21, 2021, Dolittle re-sent his October 20, 2021, email in which he had estimated additional costs for the fall shoot, and he gave a final cost for the fall shoot of  $5,750 including the cost for the drone footage. He proposed "one more review pass" over the holiday and recording a voice-over with Mike Lombardi in January to finish. On December 13, 2021, Dolittle said All Ages had edited the tour content to accommodate Lombardi's requests and requested a "final set of notes" from Lombardi for "the homestretch."

45.     For the second time, All Ages was ready to complete the film if Lombardi would provide responses and stop requesting additional work.

46.      On January 4, 2022, Kreslins at All Ages sent a new cut of the film without sound to Lombardi saying that All Ages thought it done and wanted to give it to the music composer. But, on January 21, 2022,  Mike Lombardi wrote to Kreslins to cancel the scheduled voice-over recording. He explained: "we appreciate you are continuing to push the doc along, we are eager to complete" but they wanted to postpone until the spring. Mike Lombardi said Lombardi needed time to edit the current cut and adjust the script and "He also found a bunch of photographs which could be included."

47.     Once again, Lombardi delayed completion of the project and proposed more additional work by including yet more of the still photographs that All Ages had advised against using for cinematic reasons.

48.     On February 14, 2022, Dolittle agreed to a request from Lombardi to conduct a final springtime shoot at the House "if funds are there."  On February 28, 2022, Dolittle wrote to Lombardi confirming Lombardi's request for another additional day's shoot at the House to capture the greenhouse in bloom.

49.     In that same message Dolittle reviewed the budget. He said that the $5,750 for the additional fall shoot was outstanding. He also estimated that additional cost for post-production – to  deal with Lombardi making changes and incorporating archival material and additional footage – would be **$7,000**, and the additional Spring 2022 shoot day would be $5,000. He also reminded Lombardi that a final contract payment of **$16,909.02** would be due. Dolittle estimated the total of paid and unpaid costs at **$86,334.28**. In response, Lombardi said he would pay the **$5,750** for the additional fall

shoot that week. He paid the **$5,750** due on invoice 2999 on March 24, 2022. *See* Exhibit "5."

50. Dolittle sent Lombardi a request for a "final review pass" for "any desired scripting changes" on February 28, 2022. After a typical delay, Lombardi responded on March 7, 2022, that he had yet more requests for additions to the script. He inconsistently also said that he hoped it would not add to "the $86,000 budget."

51. Lombardi acknowledged that the extra work he had requested increased the total budget to circa $86,000, and he stated an intent to make more requests for additional work which he "hoped" All Ages would perform for free.

52. On May 24, 2022, All Ages performed the additional spring shoot at the House.

53. On June 3, 2022, Lombardi wrote to Kreslins at All Ages that he had just finished his final review of the video, had a few comments, and unrealistically asked if the film could "go live" in two weeks. At that late date in the process, Lombardi expressed no dissatisfactions. Indeed, he wanted to release the film.

54. On June 7, 2022, Lombardi and his son Mike Lombardi recorded some voice-overs at Lombardi's home in New York City.

55. By the beginning of July 2022 All Ages thought the enlarged film was complete except for post-production sound and color editing. Dolittle at All Ages sent links to the film to Lombardi and asked for final notes, if any.

56. On July 5, 2022, All Ages sent Lombardi an invoice for the final contract payment of **$16,909**. *See* Exhibit "6." It remains unpaid.

57. On July 7, 2022, Mike Lombardi wrote that "The movie is looking great!"

He said that Lombardi was giving an Irvington Historical Society presentation on the Octagon House at which he intended to announce the film "As part of the finale for the presentation." He asked All Ages to create a "teaser" or preview for Lombardi to show at the presentation.

58.     Lombardi had seen the film at a late stage, was happy with it, and (3) expressed no surprise or dissatisfaction with the product or the timing.

59.     Dolittle agreed to All Ages providing the teaser requested. He explained that, to finish the film, it was necessary for Lombardi to provide final notes and approval before All Ages could send the film to a post-production studio for final sound and color editing. He noted that All Ages had shouldered costs for additional work to date, requested the final contract payment, and stated that All Ages would account for the costs for the additional work later.

60.     On July 7, 2022, All Ages provided a "picture lock" before post-production, but after the final cut approvals made by Lombardi.

61.     On July 11, 2022, All Ages sent Lombardi the trailer he asked for to use for his Irvington Historical Society presentation.

62.     The implied license, if any, was limited to one showing of the trailer during Lombardi's presentation to the Historical Society.

63.     On July 13, 2022, Dolittle again asked Lombardi for final notes on the locked master in order to finalize the film. Lombardi did not respond to the request.

64.     On July 19, 2022, Lombardi gave his presentation to the Irvington Historical Society including a screening of the Protected Work. All Ages Authorized that limited use of its work.

65.    The Irvington Historical Society immediately posted online, without All Ages' permission, a copy of the presentation including the Protected Work at minutes 5:05-10:28. As of the date of this Complaint, the infringing display is still online at https://irvingtonhistoricalsociety.org/events/the-armour-stiner-octagon-house-cabins-houses-lofts-skyscrapers-castles/ *See* Exhibit "7."

66.    The Irvington Historical Society also published the video including the infringing material on its YouTube channel at https://www.youtube.com/watch?v=s4hD5D9zNIc  *See* Exhibit "8."

67.    On information and belief, Lombardi misled the Irvington Historical Society to believe that he could authorize it to display the presentation that contained the infringing copy of the Protected Work. All Ages pleads no claim against the Irvington Historical Society at this time because it was, on information and belief, a victim of Lombardi's misrepresentations and inducements.

68.     On July 19, 2022, Dolittle again asked Lombardi for notes to complete the film. Lombardi did not respond to the request.

69.    On September 9, 2022, Dolittle sent Lombardi another link to the July 8, 2022, picture lock. He asked for final comments before sending the film for mixing. At that time, he also provided an accounting of the additional costs of $36,469 comprised of the final contract payment of $16,909.02, production costs for additional filming work in 2022 of $6,858.27, and overages for other requested non-field work of $12,701.75. Those charges were consistent with the February 14, 2022, estimate that Lombardi accepted on March 7, 2022, with the "hope" that All Ages would do other work for free (which All Ages never agreed to do).

70.     Invoice number 3217 reflects the $6,858.27 charge for additional production days in 2022. *See* Exhibit "9."

71.     Invoice number 3218 reflects a $12,701.75 charge for post-production overages due to additional work requested. *See* Exhibit "10."

72.     On September 15, 2022, Kreslins at All Ages wrote to Lombardi asking if he received Dolittle's  September 9, 2022, message.

73.     Hearing nothing from Lombardi, All Ages sent the film for post-production color correction. That left only post-production sound editing. That work can only be performed when film is in its truly final state. All Ages sent Lombardi a link to that second picture "lock" on September 19, 2022.

74.     On September 26, 2022, Lombardi wrote Kreslins that Lombardi delayed his response due to deadlines, but "I intend to re-focus on the Octagon video immediately thereafter."  He expressed no dissatisfaction with the work and did not dispute the accounting, and he admitted that the delay in completing the film was due to his own lack of diligence. As usual, he ignored the financial discussion Dolittle raised.

75.     However, Lombardi did not "refocus on the Octagon video" as promised. He cut off communications with All Ages and did not respond to All Ages further attempts to complete the project. At no time did he dispute the charges or complain about the quality of the work in which he had been closely involved.

76.     When Lombardi did not respond to attempts to communicate with him, All Ages hired counsel who wrote demanding payment on May 2, 2023. *See* Exhibit "11." All Ages offered to waive Lombardi's late fees and collection costs if he paid his debt as agreed.

77.     Lombardi alleged, in response, that All Ages over-charged, did not perform the contract in a satisfactory manner, and that he paid more on the account than All Ages' records showed. *See* Exhibit "12."

78.     In order to investigate Lombardi's excuses for nonpayment counsel for All Ages performed an extensive analysis of all communications between the parties and found that Lombardi's excuses for nonpayment lack merit. He wrote to Lombardi again on September 20, 2023, setting forth all payments to date and providing a spreadsheet of communications between the parties. That letter also gave Lombardi notice of his and the Armour-Stiner business's copyright infringements. All Ages again offered to waive late fees and collection costs if Lombardi agreed to pay his debt as agreed. *See* Exhibit "13."

79.     Lombardi did not respond to that second letter.

80.     Neither Lombardi nor the Armour-Stiner House business took down their infringing copies of the video containing the Protected Work.

81.     Lombardi's payments and obligations are set forth below:

| Invoice number | Invoice Date | Purpose | Amount Billed | Amount Paid | Date Paid | Months Late | Contract Interest | Due |
|---|---|---|---|---|---|---|---|---|
| 2935 | 05.04.2021 | Contract Payment 1 | $22,545.36 | $22,545.36 | 5/20/2021 | 0 | $0 | $0 |
| 2936 | 06.03.2021 | Contract Payment 2 | $16,909.02 | $16,909.02 | 7/20/2021 | 1 | $41.70 | $41.70 |
| 2962 | 10.19.2021 | Production overages for additional sound and added gaffer and lighting gear ($5,555.00) and DC shoot ($6,665.88) | $12,220.88 | $12,220.88 | 11/08/2021 | 0 | $0 | $0 |
| 2999 | 12.28.2021 | Fall 2021 Shoot + drone | $5,750.00 | $5,750.00 | 3/24/2020 | 3 | $517.50 | $517.50 |
| Total Paid Through 3/24/2020 | | | | $57,425.26 | Total Unpaid Through 3/24/2020 | | | $559.20 |
| | | | | | | | | |
| 3074 | 7.05.2022 | Contract Payment 3 | $16,909.02 | $0 | Not paid | 22 | $11,159.95 | $28,068.97 |

| 3417 | 9.09.2022 | Additional production Spring Shoot and other 2022 production | $6,858.27 | $0 | Not paid | NA | $0 | $6,858.27 |
|------|-----------|------|-----------|-----|----------|-----|-----|-----------|
| 3418 | 9.09.2022 | Total post-production overage | $12,701.75 | $0 | Not paid | NA | $0 | $12,701.75 |
| Total Due for Services | | | $36,469.04 | | | | | |
| Total Due for Contractual Interest | | | | | | | $11,719.15 | |
| Total Due for services and interest as of date of filing: | | | | | | | | $48,188.19 |
| Contractual collection costs to date: | | | | | | | $5,191.62 | $5,191.62 |
| Total Due | | | | | | | | $53,379.81 |

82.     In addition to the $36,469.04 debt for professional services, Lombardi is liable for contractual simple interest at 3% per month and for All Ages' collection costs including reasonable attorney's fees under the terms of the PSA. These amount to no less than $4,693.39 for attorney's fees incurred in collection, $348.23 filing fees, and by approximation $150.00 for service costs. The total due under the PSA is no less than $53,379.81.

83.     At an unknown date after July 19, 2022, Lombardi placed a link to the Irvington Historical Society's infringing YouTube video on the website of Joseph Lombardi Architects. It appears there as of the date of this Complaint notwithstanding All Ages' notification of the infringement on September 20, 2023. *See* Exhibit "14."

84.     At an unknown date after July 19, 2022, the Armour-Stiner House business placed a link to the Irvington Historical Society's infringing YouTube video on its website. It appears there as of the date of this Complaint. It appears there as of the date of this Complaint notwithstanding All Ages' notification of the infringement on September 20, 2023. *See* Exhibit "15."

85.     All Ages registered its Copyright and was issued a copyright certificate for registration number PAu 4-229-564.

## COUNT I
## DIRECT COPYRIGHT INFRINGEMENT, 17 U.S.C. § 501
### (Against Joseph Lombardi and Armour-Stiner House)

86.     All Ages incorporates the allegations contained in the foregoing paragraphs.

87.     All Ages is the author and copyright owner of the Protected Work pursuant to the terms of Exhibit "B" to the parties' Professional Services Agreement.

88.     Defendants reproduced, displayed, distributed, or otherwise copied the Protected Work without license or authorization by placing links to the Irvington Historical Society's infringing YouTube video on their respective websites.

89.     The actions and conduct of the defendants, as described above, infringed upon the exclusive rights granted to All Ages under 17 U.S.C.A. 106 to display, reproduce, and distribute its work to the public. Such actions and conduct constitute copyright infringement under the Copyright Act of 1976, 17 U.S.C.A. 501.

90.     All Ages has complied in all respects with 17 U.S.C. §§ 101 *et seq*. and secured and registered the exclusive rights and privileges in and to the copyrights of the Protected Work pursuant to 17 U.S.C. § 408.

91.     As a direct and proximate result of said acts of direct infringement, All Ages has suffered actual damages in an amount to be proven at trial.

92.     Pursuant to 17 U.S.C. 504(b), All Ages may recover its actual damages and the defendants' profits attributable to each pre-registration infringement of the Protected Work.

**COUNT II**
**Contributory Copyright Infringement**
**(Against Joseph Lombardi)**

93.     All Ages incorporates by reference all the allegations of the foregoing

paragraphs.

94.     In addition to his liability as a direct infringer, Defendant Lombardi is

secondarily liable for the infringements directly committed by the Irvington

Historical Society which copied the Protected Work.

95.     A contributory infringer is one who, with knowledge of the infringing

activity, induces, or materially contributes to, the infringing conduct of another.

96.     On information and belief, Lombardi contributed to, induced, or

assisted the two infringements committed of the Irvington Historical Society by

misrepresenting to the Society that he could authorize the Society to reproduce and

display All Ages' Protected Work.

97.     Lombardi had knowledge of the third party's infringing activity

because he inserted a link to the infringing video on his own business website.

98.     As a direct and proximate result of said acts of contributory

infringement, All Ages has suffered damages in an amount to be proven at trial.

**COUNT III**
**BREACH OF CONTRACT**
**(Against Joseph Lombardi)**

99.     All Ages incorporates by reference all the allegations of the foregoing

paragraphs.

100.     All Ages and Lombardi entered into an agreement for the provision of

professional services by All Ages in exchange for payment by Lombardi.

101.    All Ages performed services for Lombardi pursuant to the agreement.

102.    Lombardi confirmed his obligation to pay the fees accrued as a result of All Age's work and further confirmed his obligation to pay for the additional work he requested beyond the scope of the original contract.

103.    Lombardi breached the agreement by failing to pay for those services.

104.    As a result of Lombardi's breach of the agreement, All Ages has suffered contract damages in an amount to be proven at trial.

**COUNT IV**
**ACCOUNT STATED**
**(Against Joseph Lombardi)**

105.    All Ages incorporates by reference all the allegations of the foregoing paragraphs.

106.    All Ages sent Defendant invoices detailing the services provided.

107.    Defendant paid two of the three payments due under the original contract and made two payments for additional work he ordered.

108.    All Ages advised Lombardi of the cost for the additional work he requested for a Spring 2022 shoot and other additional production he requested in the Spring of 2022, and the in-house post-production overages incurred by Lombardi's requests to expand the scope of the film to incorporate his book into the script and his archival materials into the film. He expressly acknowledged, on March 7, 2022, Dolittle's estimate that that costs including the new work requested would be $86,334.28 and he requested the additional work and requested even more additional work with the "hope" that All Ages would do the other additional work for free.

109.    Lombardi never protested or objected to any of these invoices.

110.    Lombardi closely reviewed All Ages' work product at every stage. He never objected to the quality of the work and continued to request additional work.

111.    The foregoing established an account stated between Plaintiff and Defendants, in the amount of $36,469.04.

**COUNT V**
**QUASI-CONTRACT/UNJUST ENRICHMENT**
**(Against Joseph Lombardi)**

112.    Plaintiff, All Ages, incorporates the preceding paragraphs of this Complaint as though fully set forth herein.

113.    All Ages conferred a valuable benefit upon Defendants by performing professional services for them in creating the documentary film.

114.    Defendant Lombardi accepted, used, and enjoyed the benefits of the professional services that All Ages performed on his behalf.

115.    It is inequitable for Lombardi to retain those benefits without compensating All Ages.

116.    All Ages expended time and labor performing professional services for Lombardi, which Defendant used, accepted, and enjoyed as a result of All Age's efforts.

117.    As set forth herein, All Ages expected payment for performing legal services for Defendant.

118.    Because of the relationship between and among the parties, All Ages is entitled to receive the reasonable value of the services it performed for Defendants, which is $36,469.04.

## <u>RELIEF</u>

WHEREFORE, All Ages requests judgment against Defendants seeking:

1.     A finding that the Defendants directly infringed All Ages' copyright interests in the Protected Work by placing links to the infringing video on their commercial websites without any license or consent;

2.     A finding that the Defendant Lombardi contributorily infringed All Ages' copyright interests in the Protected Work by knowingly inducing the Irvington Historical Society to infringe Plaintiff's Protected Work.

3.     An award of actual damages and disgorgement of all of Defendants' profits attributable to the four infringing publications, as provided by 17 U.S.C. §504(b), in an amount proven at trial;

4.     An award of contract damages in the amount proven at trial including contractual interest and contractual costs as may accrue prior to final judgment;

5.     In the alternative, an award for account stated in the liquidated amount of $36,469.04, plus prejudgment interest;

6.     In the alternative, an award for account stated in the liquidated amount of $36,469.04, plus prejudgment interest;

7.     An award of post-judgment interest at the statutory rate; and

8.     Such other relief as the Court deems just and proper.

Respectfully submitted,
**SPECTOR GADON & ROSEN, P.C.**

By: */s/ Bruce Bellingham*
Bruce Bellingham
1635 Market Street, 7th Floor
Philadelphia, PA 19103
(215) 241-8916
PA Bar # 83503
*bbellingham@sgrvlaw.com*

July 22, 2024                    *Attorneys for Plaintiff*